McANAW, *Appellant*, v. TIFFIN *et al.*

Division Two, April 20, 1898.*

1. **Conveyances:** DEED OF QUITCLAIM: WORDS "REMISE, RELEASE AND FOREVER QUITCLAIM." The words "remise, release and forever quitclaim" in a quitclaim deed are sufficient operative words of conveyance.

2. ———: CONDITIONAL DEED. A deed containing a recital that "this deed of quitclaim is made with the understanding that the grantee will take care of and see that the grantor is properly treated during his lifetime," is not a conditional deed, there being no clause declaring it was to be void on a failure by the grantee to comply with its conditions. For such failure the grantor's remedy would have been by action for damages, for breach of the covenants of the deed.

3. ———: INSANE PERSON'S DEED. The weight of modern authority is that an insane person's deed, made before inquest, is not void, but only avoidable at the instance of the grantor's guardian thereafter appointed, his heir or legal representative.

*NOTE.—Decided November 23, 1897, and rehearing denied April 20, 1898.

4. ———: ———: PROCEEDINGS TO SET ASIDE: RATIFICATION. The grantor of a deed to his son's wife was insane, and his guardian before it was recorded promptly brought suit to have it set aside. The grantee was not put in possession of the property during the life of the grantor, and the guardian inventoried the property as that of his ward and collected the rents. The guardian's authority was terminated by the grantor's death, and nothing further was done in the suit. *Held*, that only the heirs or administrator of the grantor could thereafter disaffirm the deed, and as they did nothing to renew the guardians's suit its abatement will be held an abandonment of any purpose to disaffirm. *Held*, also, that the collection of the rents, the institution of the suit and the inventory of the property by the guardian were not sufficient to disaffirm the deed by him. *Held*, also, that the son and only heir ratified the deed to his wife by joining with her in conveying it to a third party after the death of his father.

5. ———: ———: ———: RE-ENTRY. A statement by the guardian that he went to the property conveyed by his ward, for the purpose of taking possession, was in every room of the house and continued to collect the rents from his ward's tenant then there, is not sufficient evidence of re-entry by him.

6. ———: ———: ———: DISAFFIRMANCE. Before a suit by a guardian to annul his insane ward's deed on the ground that it would be a cloud on the title, can be held to be a disaffirmance of such deed, it must appear that such suit would in all probability have avoided it, had it been prosecuted to final determination.

*Appeal from Clinton Circuit Conrt.*—HON. WILLIAM S. HERNDON, Judge.

AFFIRMED.

*Carlton Henry, H. T. Herndon* and *J. J. McAnaw* for appellant.

(1) A release deed in the ordinary form may convey title. *Wilson v. Albert,* 89 Mo. 537. (2) A release or quitclaim deed does not operate upon the land itself nor upon the title directly. *Bogy v. Shoab,* 13 Mo. 380. (3) A mere naked release deed to one not in possession or having a vested interest would be void. *Branham v. Mayor,* 24 Call, 606; *Bennett v. Irwin,* 3 Johns. 366; *Kerr v. Freeman,* 33 Miss. 292. (4) At most it

can only convey such interest as the maker can lawfully convey. *Bogy v. Shoab*, 13 Mo. 380; *Gibson v. Chouteau*, 39 Mo. 568; *Ridgeway v. Halliday*, 59 Mo. 455; *Merritt v. Merritt*, 62 Mo. 150. (5) And as in this case the deed contains no words of conveyance except remise release and quitclaim; as a primary conveyance it can only operate through the statute of uses. *Wilson v. Albert*, 89 Mo. 537; *Pray v. Pierce*, 7 Mass. 381; *Russell v. Coffin*, 8 Pick. 143; *Jackson v. Beach*, 1 Johns. 401; *Perry v. Price*, 1 Mo. 553. (6) The affinity does not support the consideration of love or affection. Hopkins, Real Prop. 410; *Jackson v. Caldwell*, 1 Cow. 640. Nor could it operate to lessen the effect of the valuable consideration. 1 Lewin on Trust (*p. 74), C. 13; *McKinney v. Seattles*, 31 Mo. 54. (7) "This deed is made upon the understanding" is a clause which denotes a condition. *St. Louis v. Wiggins*, 88 Mo. 619. (8) Where a deed is made by an aged parent to child on agreement to support, a failure to perform, child will forfeit the land on grounds in the nature of a condition subsequent. *Blake v. Blake*, 56 Wis. 392; *Delong v. Delong*, 56 Wis. 514; *Leach v. Leach*, 4 Ind. 628; *Reed v. Burns*, 13 Ohio St. 49; *Jenkins v. Jenkins*, 3 Mon. 327; *Scott v. Scott*, 3 B. Mon. 2; *Yonkum v. Yonkum*, 77 Ill. 85; *Devereaux v. Cooper*, 11 Vt. 103; *Richter v. Richter*, 12 N. E. Rep. 698; *Staley v. Howell*, 52 N. W. Rep. 888; *Alford v. Alford*, 1 Tex. Civ. App. 245. Some cases hold such deeds in the nature of mortgages with strict defeasance. *Saper v. Guernsey*, 71 Pa. St. 219; *Bethalem v. Annis*, 40 N. H. 34; *Bryant v. Erskine*, 55 Me. 153; *Evans v. Norris*, 6 Mich. 369; *Hawkins v. Clermont*, 15 Mich. 513. (9) When a deed imposes duties upon grantee, and the grantee does not perform them, and such duties are not judicially enforcible or remediable, either because the grantee is under disability or because the duty is of a personal

nature, the grantor's only remedy is to recover the land. Tiedeman, Real Prop., sec. 797; Bishop, Contracts, secs. 74 and 78. (10) As the grantor was in possession the breach of condition revested title. *O'Brien v. Wagner*, 94 Mo. 93. (11) As viewed from an equity standpoint, the action of the guardian and the grantee Ada L.; they both taking a *statu quo ante*, amounted to a rescission; she voluntarily abandoning her duties under the deed and the guardian taking the land. *Kerr v. Bell*, 44 Mo. 125. (12) The feoffment deed or contract of an insane person made after inquest of lunacy is void. *Rannels v. Gerner*, 80 Mo. 474; *Coleman v. Farrar*, 112 Mo. 84; *Wait v. Maxwell*, 5 Pick. 217; *Griswold v. Butler*, 3 Conn. 231; *Pearl v. McDonnell*, 3 Marsh. 658. (13) The feoffment of an insane person made prior to inquest is voidable. 5 Bacon's Abdg. [Johns. Ed.] 26; 2 Kent. Com. 236; 2 Bla. Comm. 291; 3 Wash. Real. Prop. 249, 250. (14) All contracts and dispositions of property by insane person prior to inquest of sanity are by statute in Missouri placed on the footing of feoffments and are voidable only with power in the guardian to ratify or disaffirm. R. S. 1889, sec. 5542; *Rannels v. Gerner*, 80 Mo. 474; *Coleman v. Farrar*, 112 Mo. 84; *Halley v. Troester*, 72 Mo. 73; *Tolson v. Garner*, 15 Mo. 492. (15) The acts of the guardian in entering, taking and holding possession, and of Ada L. in abandoning her duties under the deed, are a disaffirmance of the deed. *Ashnead v. Reynolds*, 127 Ind. 444; *Nichols v. Thomas*, 53 Ind. 53; *Crawford v. Scovill*, 94 Pa. St. 48; *Judge v. Stone*, 44 N. H. 593; *Hull v. Louth*, 109 Ind. 315; *Key v. Davis*, 1 Md. 32; *Brown v. Freed*, 43 Ind. 253; *Flanders v. Davis*, 19 N. H. 139; *Somers v. Pumphrey*, 24 Ind. 231; *Hovey v. Hobson*, 23 Me. 451; *Allis v. Billings*, 6 Met. 415; *Gibson v. Soper*, 6 Gray, 279. (16) As to what it takes to constitute a disaffirmance of voidable deeds, see *Leitensdorfer v. Hempstead*, 18

Mo. 269; *Kerr v. Bell*, 44 Mo. 125; *Baker v. Kennett*, 54 Mo. 82; *Mfg. Co. v. Lamb*, 81 Mo. 224.

*Turney & Goodrich* for respondents.

(1) The deed of an insane-person not under guardianship and the deed of an infant are placed upon the same footing and are governed by the same rules. They are not void but voidable. They convey seizin and title which continue in the grantee until the deed is legally set aside or until the party claiming under it is actually ousted from possession of the premises by some one authorized to disaffirm the deed. Tiedeman on Real Prop. [2 Enl. Ed.], sec. 792; *Shipley v. Brown*, 125 Mo. 445; *Watts v. Mut. Ben. Ass'n*, 126 Mo. 630; *Wait v. Maxwell*, 5 Pick. 217; *Tolsons' Adm'r v. Garver*, 15 Mo. 494; *Allis v. Billings*, 6 Met. 415. (2) The deed of an insane person not under guardianship can be avoided only by his guardian subsequently appointed his heir or legal representatives. *Hill v. Taylor*, 125 Mo. 343; *Breckenridge v. Ormsby*, 19 Am. Dec. 72; *Rollet v. Heiman*, 120 Ind. 511; Tiedeman on Real Prop. [2 Enl. Ed.], sec. 792. (3) Acts of disaffirmance by the guardian of an insane person resting wholly in parol or of an uncertain or doubtful character will not avoid the deed of his ward made before office found. *Washington v. Collins*, 13 Mo. App. 1; *Allis v. Billings*, 6 Met. 415. (4) The heirs and legal representatives of an insane person may ratify his voidable deed; and if the ratification is after the death of the maker and before a suit instituted by the guardian to set aside the deed is brought to trial, the acts of the guardian will not affect title acquired under the deed. (5) The deed of an insane person, conceding the insanity, can not for that reason alone be avoided at the suit of a creditor of the grantor. *Rollet v. Heiman*, 16 Am. St.

Rep. 340. (6) This plaintiff is not even a creditor of the grantor. He is a creditor of the grandson of the grantor and he can not assail the deed for any reason. Schoul. Dom. Rel., p. 571. (7) A quitclaim deed conveys to the grantee the title of the grantor and is as effectual for that purpose as a deed of general warranty. *Wilson v. Albach*, 89 Mo. 537; *Bray v. Conrad*, 101 Mo. 331; *Allis v. Billings*, 6 Met. 415. The deed in this case is the ordinary printed form in use by all conveyancers; and will be found at some point in the chain of half the titles in this State. In nothing is it peculiar or unusual.

BURGESS, J.—This is an action of ejectment for the possession of lots ten and twelve, block fifty-seven, in the city of Cameron, Clinton county. The action was begun on the twenty-fifth day of September, 1895, against E. E. Dickover and Clayton Tiffin, the petition being in the ordinary form.

The defendant Clayton Tiffin filed his separate answer, alleging that on the twenty-eighth day of January, 1892, he contracted in writing with Peter F. Clark, now deceased, for the sale of said lots to him and in pursuance to such contract put said Clark in possession of said lots on said date; that on the twenty-fifth day of September, 1895, he and his wife conveyed all their interest in the lots to Margaret Clark. He disclaims any interest in the lots. The defendant Dickover by his separate answer admits that he was in possession on and before April 21, 1895, but alleges that his possession was lawful as tenant of Peter F. Clark now deceased. Admits that he occupied said lots as such tenant from the date aforesaid to the first day of January, 1896, and that since said date he has occupied the lots as tenant of Margaret Clark, whom he alleges is the owner. Margaret Clark, on her motion, in

which she alleges among other things that she is executrix of the estate of Peter F. Clark, deceased, was made a party defendant. Margaret Clark, by her separate answer, denies that on the twenty-first day of September, 1895, or at any other time, the defendants or either of them unlawfully entered said premises or any part thereof and unlawfully withholds possession thereof from plaintiff. But she admits that the defendant Dickover at said date was, and before and since has been in possession of said lots and premises as tenants of Peter F. Clark, now deceased, and of this defendant, and she alleges that his possession was and is lawful. She then sets up an equitable defense to the suit. The trial was before the court and a jury.

Samuel Matthis, Sr., is the common source of title. On the trial plaintiff showed that by sheriff's deed of date September 17, 1895, he had acquired whatever title or interest Samuel Matthis, Jr., had in the lots, proved the value of the rents and profits, and rested.

Defendants then read in evidence the following deeds to wit:

*First.* "This indenture made on the tenth day of June, A. D. 1891, by and between Samuel Matthis, Sr., of the county of Clinton and State of Missouri, party of the first part, and Ada L. Matthis, of the county of Clinton and State of Missouri, party of the second part, *witnesseth* that the said party of the first part, in consideration of the sum of love, affection and care of myself and one hundred dollars to him in hand paid, by the said party of the second part, the receipt of which is hereby acknowledged, does by these presents, remise, release and forever quitclaim, unto the said party of the second part, the following described lots, tracts or parcels of land, lying, being and situate in the

county of Clinton, and State of Missouri, to wit: all of lots No. ten and twelve in block No. fifty-seven in the town (now city) of Cameron, in the county and State aforesaid.

"This deed of quitclaim is made with the understanding the party of the second part will take care of and see that he is properly treated during his lifetime.

"To have and to hold the same with all the rights, immunities, privileges and appurtenances thereto belonging unto the said party of the second part, and her heirs and assigns forever; so that neither the said party of the first part, nor his heirs, nor any other person or persons for him or in his name or behalf, shall or will hereafter claim or demand any right or title to the aforesaid premises, or any part thereof, but they and every one of them shall by these presents be excluded and forever barred.

"In witness whereof, the said party of the first part has hereunto set his hand and seal, the day and year first above written.    SAMUEL MATTHIS, SR.    [SEAL]."

Said deed was acknowledged in due form on the tenth day of June, 1891. And was on the tenth day of September, 1891, filed for record in the recorder's office.

*Second.*    Deed of general warranty, dated January 6, 1892, executed by Samuel Matthis, Jr., and Ada L. Matthis as husband and wife, conveying the lots in question to Clayton Tiffin in consideration of $5,000. Duly acknowledged and recorded January 9, 1892.

*Third.*    Deed of general warranty dated January 22, 1892, from Clayton Tiffin, conveying to Julia A. Tiffin, his wife, consideration $1 and love and affection, the property in controversy. Duly acknowledged and recorded, January 23, 1892.

Defendants offered in evidence deed from Clayton Tiffin and Julia A. Tiffin his wife, conveying to Mar-

garet Clark the property in controversy and lots 2, 4 and 6 and north half of 8, and other property. The operative words are: "Bargain, sell and convey, all the right, title and interest owned by grantors or either of them January 28, 1892, and at this date." Duly acknowledged and recorded, September 28, 1896. Plaintiff objected to the introduction of the above deed for the reason that it was neither made nor recorded until after the institution of this suit. Which objection the court overruled, to which ruling the plaintiff then and there excepted.

Thomas E. Turney on behalf of defendant, testified: "I know that the deed of Samuel Matthis to Ada L. was delivered before the death of Samuel Matthis. Mrs. Matthis had it in her possession and showed it to me and I read it." Defendants then rested.

The plaintiff in rebuttal proved that at the time of the execution of the deed from Samuel Matthis, Sr., to Ada L. Matthis that she was the wife of Samuel Matthis, Jr., and that at that time and for at least two years next preceding, Samuel Matthis, Sr., was demented and incapable of attending to any kind of business, of which said Ada was fully advised. That on the twenty-third day of July, 1891, Samuel Matthis, Sr., was adjudged to be of unsound mind by the probate court of Clinton county, and on the following day Virgil R. Porter was duly appointed guardian and curator of his personal estate, who thereafter filed his inventory of the property of his ward, which embraced the lots in question and the furniture and fixtures in the hotel building situated on said lots. That said Porter instituted suit as curator of said Matthis, Sr., to set aside the deed to Ada Matthis, but that his ward died before the termination thereof. That Porter as such curator collected the rents of the real estate

monthly from Cable, the tenant in possession. After Porter was appointed curator of Matthis, Sr., he caused him to be taken to the house of one Mrs. Adams where he remained until his death which occurred on the third day of September, 1891. All evidence introduced by plaintiff in rebuttal tending to show that Samuel Matthis, Sr., was insane at the time of the execution of the deed by him to Ada L. Matthis, and the appointment of a guardian for him thereafter and the disaffirmance of said deed by his guardian was stricken out on motion of defendants, to which ruling of the court plaintiff objected, and saved his exceptions.

Plaintiff next offered in evidence, but which was excluded by the court, the deposition of one J. A. Cable, taken in an action in said circuit court, wherein Henry C. Coit et al. were plaintiffs, and Clayton Tiffin et al. were defendants, for the purpose of setting aside the deed from Samuel Matthis, Sr., to Ada Matthis, upon the ground that it was obtained by fraud and undue influence and the mental incapacity of said Samuel Matthis, Sr., to make it.

Defendants then asked and the court gave an instruction to the jury in the nature of a demurrer to the evidence, to which plaintiff excepted. Whereupon plaintiff took a nonsuit with leave to move to set the same aside, which said motion being overruled he saved his exceptions, and appealed.

We will treat the case as if Samuel Matthis, Sr., was insane at the time of the execution of the deed to Ada L. Matthis, and that a guardian was thereafter appointed for him and that his acts of disaffirmance of this deed were as herein stated, for it is upon that theory that the case is presented here.

The first point raised by appellant is with respect to the sufficiency of the deed from Samuel Matthis,

Sr., to Ada L. Matthis, the contention being that the operative words in the deed are those of release only, and as the evidence did not show any prior estate or possession in the grantee for the release to operate upon as a common law conveyance, the deed was void. The operative words in the deed are "remise, release and forever quitclaim," and under the rulings of this court, are sufficient operative words of conveyance. Thus in *Wilson v. Albert*, 89 Mo. 537, the same operative words were used in a deed of quitclaim then under consideration, and it was ruled that the deed contained sufficient operative words of conveyance.

The same rule was subsequently announced in *Bray v. Conrad*, 101 Mo. 331, and must be regarded as the settled law of this State.

Nor do we think the deed conditional. It is an ordinary deed of quitclaim, the consideration expressed being love, affection, and care of the grantor, and $100 to him in hand paid. It is true that it contains the further recital that "that this deed of quitclaim is made with the understanding the party of the second part will take care of and see that he is properly treated during his lifetime." But it contains no condition expressed or implied. It is no more conditional than if it had provided that it was made with the understanding that the grantee should pay a moneyed consideration for the lots at some time thereafter. It does not contain any clause by which it was to become void upon the failure by the grantee to comply with any of its provisions, or by which the grantor is given the right to re-enter. In case of non-compliance with its terms, the grantor's only remedy upon that ground was by action for damages, for breach of the covenants in the deed. In *Studdard v. Wells*, 120 Mo. 25, it was said: "It is a familiar rule often asserted in the books that conditions subsequent are not favored in the law, because

they have the effect in case of breach to defeat vested estates; and when relied upon to work a forfeiture, they must be created in express terms or by clear implication. And courts will construe clauses in deeds as covenants rather than conditions, if they can reasonably do so.'' To hold that this deed contains a condition subsequent is to inject into it something that it does not contain, which we are not at liberty to do.

It is contended by plaintiff that the deed from Samuel Matthis, Sr., to Ada L. Matthis, if not absolutely void, was at least voidable by his guardian after inquest, and that his guardian did disaffirm said deed. As to whether or not the deed of an insane person made before inquest is void, or only voidable, the authorities are in conflict. It was held in *Dexter v. Hall*, 15 Wall. 9; *In re Desilver*, 5 Rawle, 111; *Van Deusen v. Sweet*, 51 N. Y. 386, that the deed of an insane person is void, but the great weight of modern authority is to the effect that such a deed is voidable only at the instance of the grantor's guardian thereafter appointed, his heir or legal representatives. *Wells v. Mut. Ben. Ass'n*, 126 Mo. 630; *Arnold v. Iron Works*, 1 Gray, 434; *Crawford v. Scovell*, 94 Pa. St. 48; *Gribben v. Maxwell*, 34 Kan. 8; *Burnham v. Kidwell*, 113 Ill. 425; *Copenraht v. Kienby*, 83 Ind. 18; *Fay v. Burditt*, 81 Ind. 433; *Riggan v. Green*, 80 N. C. 236; *Breckenridge Heirs v. Ormsby*, 1 J. J. Marsh. 236. There is likewise much conflict in the authorities as to whether or not, in case a valuable consideration was passed for such a deed, it is a necessary prerequisite to its annulment that the consideration be returned to the grantee and he placed *in statu quo*; but it is unnecessary in this case to pass upon that question, for while no valuable consideration was received by Samuel Matthis, Sr., for the property conveyed by the deed now under consideration, it passed the title in fee, even though the grantee, Mrs. Matthis,

took the deed with full knowledge of the imbecility of Samuel Matthis, Sr.

The question then is as to the disaffirmance of the deed by the guardian of the grantor. Upon his appointment the guardian inventoried the property in question as the property of his ward, collected the rents, and instituted suit to prevent the grantee from so using the deed as to cast a cloud upon the title of his ward, and alleging the fee simple title to be in him. This was all done within a reasonable time after his appointment as guardian; but before the termination of the suit the ward died, and by reason thereof all authority of the guardian as such ceased. No steps were thereafter taken by the administrator or heirs of Samuel Matthis, Sr., to disaffirm his deed, and no one else had the right to do so. *Rollet v. Heiman*, 120 Ind. 520; Devlin on Deeds [2 Ed.], sec. 75. Upon the contrary, Samuel Matthis, Jr., the only heir, ratified the deed to his wife on the sixth day of January, 1892, if not before, by joining her in a deed by which the property was conveyed to the defendant Clayton Tiffin. We are not inclined to hold that the mere collection of rents by the guardian, and the institution of the suit by him are disaffirmance of the deed, and all other acts done by him in that direction were sufficient to that end, but rather that the abatement of that suit by the death of the ward which does not seem to have been renewed by his administrator or his heir was an abandonment of any such purpose. We therefore think that the acts of the guardian did not divest the title of Mrs. Matthis.

There was no error committed in excluding the deposition of J. A. Cable taken in another suit in which Henry C. Coit *et al.* were plaintiffs and Clayton Tiffin *et al.* were defendants, because immaterial.

Our conclusion is that the judgment should be affirmed, and it is so ordered. GANTT, P. J., and SHERWOOD J., concur.

### ON MOTION FOR REHEARING.

BURGESS, J.—In this cause a motion for rehearing has been presented, based upon the contention that the deed from Samuel Matthis, Sr., to Ada L. Matthis was disaffirmed by entry of the guardian of said Samuel upon the premises, and also by the institution of the suit by the guardian to set aside and remove said deed upon the ground that it was a cloud upon the title to said property, and that plaintiff has the right to avail himself of such disaffirmance in this action for possession of the land.

The evidence of entry upon the property by the guardian for the purpose of avoiding the deed of his ward was not, we think, sufficient for that purpose. It is very unsatisfactory to say the least of it. It is true the guardian testified that when he went to take possession he was in every room of the house, and that he understood a deed had been made by Samuel Matthis, Sr., to Ada L. Matthis, at the time he took possession of the property. It might be inferred from these statements that he did intend to take possession in disaffirmance of that deed but when the title of real property is to be effected by mere entry, a clear case should be made out, and nothing left to inference. His being in every room of the house was not at all inconsistent with the idea that he was there for some other purpose than that of taking possession, nor is the fact that he collected rent from the tenant of his ward, who was then in possession, any evidence that he had in fact taken possession. The tenant could not controvert the title of his landlord and the landlord being insane and under guardianship the tenant was legally bound to pay the rent to the guardian. He could not pay it to anybody else.

It is well settled that there can be no disaffirmance of a contract by an infant or insane person, or by the

heirs or guardians of such persons unless there is an intention to disaffirm, and that this intention must be indicated by some positive and unequivocal act inconsistent with the continued validity of the contract. *Land and Loan Co. v. Beem*, 2 Ill. App. 390; *Dixon v. Merritt*, 21 Minn. 196; *Roberts v. Wiggin*, 1 N. H. 73.

In order to justify the contention of plaintiff that the institution of the suit by the guardian to annul the deed upon the ground that it was a cloud upon the title to the property, amounted to a disaffirmance of the deed, it must appear that such proceedings would in all probability have resulted in avoiding it, had they been prosecuted to a final determination. No such effect can be accorded a proceeding of this character, which was abandoned or abated before its final determination. It will not do to say that the beginning of such a proceeding does *ipso facto* avoid the deed of the insane grantor, where, as in this case, the proceedings abate by reason of the death of the grantor before the determination of such proceeding. If it were otherwise the guardian of the insane grantor could avoid his deed by bringing suit for that purpose one hour and dismissing it the next, a doctrine to which we are unwilling to give assent. All the cases cited by plaintiff in which it was held that the institution of a suit for that purpose was an avoidance of the deed of the infant or insane ward were suits which were prosecuted to final judgment.

It seems that after such a deed has been disaffirmed, that the disaffirmance may be taken advantage of by a privy in estate, or by anyone interested in the estate. See note to *Craig v. Van Bebber*, 18 Am. St. Rep. 698. The same ruling was made in *Valpey v. Rea*, 130 Mass. 384, but the decision in that case turned upon the statute of that State.

For these reasons we adhere to the original opinion, and overrule the motion.